JOHN D. PAIGE, Admr., Appellee, *vs.* THE ILLINOIS STEEL COMPANY, Appellant.

*Opinion filed February 20, 1908—Rehearing denied April 10, 1908.*

1. TRIAL—*counsel may in opening argument state as fact what is alleged as a fact.* In making his opening argument to the jury it is not improper for plaintiff's counsel to state that the defendant had sufficient notice of the necessity of providing better lights for the performance of certain work, where the declaration alleges the fact to be that the defendant was negligent in failing to provide sufficient light for that purpose.

2. SAME—*it is improper for counsel to state that the case does not require instructions.* It is improper for counsel for the plaintiff, in his closing argument, to explain to the jury how instructions are prepared and given, and to state to the jury that he was not going to ask for any instructions as the case did not need them; but such action cannot be reviewed where no objection was made or any ruling requested or exception saved by bill of exceptions.

3. EVIDENCE—*fact that witness is not positive does not require exclusion of his testimony.* The fact that a witness was not certain and positive in his statements does not require the exclusion of his testimony, as the question of the weight to be given to such testimony is for the jury to determine.

4. MASTER AND SERVANT—*what is not contributory negligence.*
The fact that a servant, when confronted with sudden peril from
the unexpected tipping of a ladle of molten metal, chose the wrong
avenue of escape, so that he was overtaken by the metal and
killed, does not constitute contributory negligence, as a matter of
law, even though he could have escaped had he gone the other way.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

The appellant, Illinois Steel Company, operated a plant at Joliet, in this State. In the course of its business it converts iron into steel and has what is termed a "mixer mill," one of the departments of the converter. The iron is brought from the blast furnaces into this mixer mill and combined with other iron and mixed and then converted into steel. This mixer mill is a metal building, in the east half of which are located the "mixers," which are large iron vessels, described as being in the shape of an old-fashioned gravy bowl, probably fifteen feet wide and twenty-five feet long, standing side by side. Over these mixers and through the mill run two electric cranes, so situated and operated as to enable the persons engaged in this work to move loads of molten iron in any direction, one of the cranes serving the eastern and the other the western portion of the mill. The men who operate these cranes sit in a cage several feet above the floor and move with the cranes. The blast furnaces are connected with the mixer mill by railroad tracks, which are elevated and connected with tracks in the mixer mill. There are two of these tracks in the mixer mill. The north one runs east to the first mixer, and the other runs through the mill into the converter or vessel room, going under what is called the weighman's floor. Upon these tracks are transported ladles of molten metal. These ladles are in the shape of a coffee cup with a spout, and have a capacity of about fifteen tons. It is in these that the melted

metal is transported from the furnaces into the mixer mill, and when there the contents are emptied into the mixers, when the metal in them is to be mixed. Upon the sides of these ladles are trunnions eight or nine inches in diameter and about fourteen inches long. In doing the work these ladles are picked up by means of the electric cranes, to which are attached large hooks for holding the ladles. These hooks are placed on the trunnions by an employee who does nothing else and who is termed the "hooker on." Above the floor of the mixer room is an iron platform, reached by means of iron stairs located at the west end. This platform is of considerable length. The width varies from something like four to eighteen feet. This is the weighman's or scalesman's floor, on which are located devices for operating the mixers and also platform scales for each mixer. East of this floor, and on a level with it, is an opening which leads out of the mixer mill, with stairs leading down to the ground. While the work is progressing the weighman stands upon the iron platform or weighman's floor herein referred to. It is there that he performs his work, which it to attend to weighing the metal where it is to be weighed, and, in instances where the scales are not brought into use, to judge of the quantity of metal the ladles contain. The ladles for a direct heat are not weighed, the weigher estimating the amount of metal therein. This process is called "guessing off." In cases where the ladles are guessed off the contents of one ladle are poured into another ladle which comes over the track and the metal goes into the vessels without mixing, while if the metal is to be mixed it is not guesed off but weighed and then emptied by use of machinery into the mixer. The process of taking the molten metal from the blast furnace ladles to the vessel ladles is termed "taking a direct heat," and in doing this the quantity is guessed off by weighmen. The plant was operated both day and night, and at night the mixer mill was lighted by means of two electric arc lights,—one in

each end,—and some incandescent lights. Besides these lights the "hooker on" carried a torch. Numerous men were employed doing the various parts of the work, among others John D. Paige as weighman and Philip Jasper as "hooker on." On the night of September 15, 1905, the deceased, John D. Paige, was an employee of appellant and was at work in this mixer mill, weighing each ladle and its contents, or, in case of "direct heat," estimating the quantity of metal to be poured into the ladle. One of these ladles filled with molten metal was hooked or partially hooked to the crane by Philip Jasper, the "hooker on," and lifted and carried some distance to the point where the ladle to be filled was located. At this time the deceased was standing upon the weighman's platform engaged in estimating the quantity of metal to be poured out of one into another ladle. When the ladle containing the metal was started to tip, it fell, spilling the metal on the floor, causing a burst of flames, smoke and gas, and the metal flowed south and west. The deceased, Paige, in attempting to escape, ran down-stairs to the west and was so burned that he died. Reed, who 'was on the same platform, ran east through the opening there and escaped without injury. Suit was commenced by the administrator to recover.

The declaration, as filed, consisted of seven counts, but the trial court instructed the jury to disregard the third and fifth and permitted the case to go to the jury on the other counts. The negligence charged in the counts are: First, failure to exercise reasonable care to furnish reasonably safe places in which to work; second, failure to furnish a safe place to work and failure to provide reasonably safe avenues or means of escape in the event that the molten metal should be spilled; fourth, failure to maintain and keep in proper shape and repair the building and appliances in the mixer mill; sixth, the employment of a habitually careless and incompetent servant as "hooker on;" and seventh, failure to furnish sufficient lights to enable the hooks to be

properly adjusted in the ladles. Each count contains the essential averments in addition to the allegations describing the negligent acts or omissions of duty.

The case was tried in the circuit court of Will county, and a verdict of guilty was returned by the jury fixing the plaintiff's damages at $6000. A motion for a new trial was overruled and judgment entered on the verdict, which has been affirmed by the Appellate Court, and the appellant, by appeal, brings the case to this court.

GARNSEY & WOOD, (KNAPP, HAYNIE & CAMPBELL, of counsel,) for appellant.

DONAHOE, McNAUGHTON & McKEOWN, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The errors assigned by appellant are, permitting improper remarks of counsel; refusing instructions; modifying certain instructions; overruling motion to direct verdict at the close of evidence, and admitting improper evidence.

*First*—In stating the case to the jury, counsel for appellee, among other things, said: "And the company had sufficient notice of the necessity of providing better lights for the performance of that work." This remark was objected to and the objection overruled, to which appellant excepted. It is urged that the court erred in this ruling. The purpose of an opening statement is to advise a jury of the facts relied on by the plaintiff as constituting his right of action, together with the principles of law applicable thereto. Here the plaintiff has alleged in one count of the declaration that the appellant was negligent, in that it failed to furnish sufficient light in the work room to enable its servants to properly and safely perform the work required of them. The issue on this point was whether or not the appellant had sufficient light, and it was proper for counsel to state that the company had sufficient notice of the neces-

sity of providing better light for the performance of the work. This is but a statement of what is alleged to be a fact. It is not argument. There was no error in this ruling of the trial court.

It is urged also that there was error in certain statements made by counsel for appellee in the closing argument. In his closing remarks he stated: "If I want the trial judge to give instructions, I prepare instructions stating the law and hand him a bunch of them, and the court passes on them and refuses some and gives others. The defense does the same. I am not going to ask for any instructions. This is not a case that needs any instructions." These statements were not proper. It was improper for counsel to make such remarks to the jury. It was of no consequence to the jury whether appellee requested instructions, and it was improper for counsel to tell the jury that he was not going to ask for instructions or that the case was not one that needed instructions. But appellant did not object to these remarks. The court was not called upon to rule upon them and there is no exception preserved thereto in the bill of exceptions.

*Second*—It is contended that the trial court erred in the admission of testimony of the witness Joseph Bowers. It is argued that this witness was not certain and positive; that his testimony was entirely in the present tense,—that is, related to conditions existing at the time he was giving evidence rather than to conditions existing at the time the deceased received his injuries. There is no merit in this contention. An examination of the testimony of this witness fails to disclose any erroneous ruling of the court. The question of the weight to be given the testimony was for the jury, and the trial court properly permitted his testimony to go to the jury.

*Third*—Appellant contends that the court improperly modified its eighth and ninth instructions. We have carefully examined these instructions as offered and as modified and given. The objection is the same to the modifica-

tion of each of these instructions. It is argued that the modification is such as confines the jury to the actual knowledge of the deceased of conditions existing before the ladle tipped, instead of extending the language so as to embrace his obligation to know,—that is, what by the exercise of ordinary care he would have known. The eighth instruction contains the language, "or of which he, in the exercise of ordinary care for his own safety, had equal means of knowledge with the defendant." The ninth deals with the question of the position in which the deceased was located immediately before the injury, and we think the instruction is not open to the criticism made by counsel.

*Fourth*—The only remaining question proper for our consideration is that arising upon the refusal of the trial court to direct a verdict in favor of appellant at the close of the evidence in the case. The judgment having been reviewed and affirmed by the Appellate Court, consideration of this question here is limited to the question whether there is evidence in the record which fairly tends to support the verdict. It is argued that the deceased was not, at the time and immediately before the injury, in the exercise of reasonable care for his own safety, in that he was not at the proper place, and that when the ladle fell he ran down the stairway instead of going out at an opening on a level with the platform on which he was standing. We have carefully read the testimony of the witnesses as abstracted, and also from the record, bearing upon this question. We find an abundance of evidence justifying the conclusion that the deceased was in no respect guilty of negligence in standing on the platform at the place he was when the ladle fell. It is probably true if he had followed Reed out through the opening on the level with the platform he would have escaped injury, but we do not agree with counsel that he in not doing so was guilty of contributory negligence as a matter of law. The deceased, when the ladle suddenly fell, was without warning confronted with a perilous situation. He was then

in such position as to be threatened with immediate injury and death. It was an unexpected emergency that would necessarily excite alarm. Persons so surrounded are not required to exercise all the presence of mind and the care and caution which would be reasonably expected to attend the acts of a person under ordinary circumstances. The mere fact that in the rapid action of mind and body impelled by the horror of the situation, the deceased, in his attempt to escape, took the course he did instead of the other avenue that was open to him, will not, as a matter of law, render him guilty of contributory negligence. This question, as well as all other questions of fact, was properly submitted to the jury, and the affirmance of the judgment by the Appellate Court is conclusive of such questions. There are no other errors assigned which require discussion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*