## Alfred M. Swengel, Administrator, Appellee, v. Illinois Third Vein Coal Company, Appellant.

### Gen. No. 6,264.

1. MINES AND MINERALS, § 92*—*what is insufficient refuge place.* Under section 21 (b) of the Act of April 18, 1899, as to mines and miners (J. & A. ¶ 7489), requiring places of refuge two and one-half feet deep in side walls or a clear space two and one-half feet wide between the car and the rib, a clear space on one side only of a passageway is sufficient, but a clear space of two and one-half feet between tracks, both of which were being used, is not a compliance with the act where such space is accustomed to be used in travel by the car mules.

2. DEATH, § 45*—*when whole of coroner's verdict is admissible.* The whole of a coroner's verdict is competent evidence in an action to recover damages for death, although containing a finding that the jury "finds no blame" on the defendant in the action.

Appeal from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1916. Reversed and remanded. Opinion filed October 12, 1916.

McDOUGALL, CHAPMAN & BAYNE, for appellant; MASTIN & SHERLOCK, of counsel.

J. L. SPAULDING and J. L. MURPHY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

On April 7, 1907, Ricardo Milani was killed in the mine of the Illinois Third Vein Coal Company at Ladd, while he was in the employ of said company as a coal miner. His administrator brought a suit against said company in the Circuit Court of Bureau county to recover damages for the benefit of his next of kin. That case was tried and a judgment for plaintiff was reversed by us and the cause was remanded in *Swengel v. Illinois Third Vein Coal Co.*, 154 Ill. App. 409. This record does not show what was afterwards done with that suit, but a special plea filed in this case and setting up the former proceeding was withdrawn and is not abstracted nor relied upon. This suit was begun by the widow of Milani in supposed compliance with the statute then existing and, upon a change in that legislation, the administrator was substituted for the widow as plaintiff. Neither side raises any question because of the pendency or result of the former suit. The case went to a jury on the first and third counts of the declaration, as amended, and the general issue. Plaintiff had a verdict and a judgment for $3,000, and defendant appeals.

When this accident occurred, the Act of April 18, 1899, concerning mines and miners, was in force. Section 21 (b) was as follows (J. & A. ¶ 7489):

"On all hauling roads or gangways on which the hauling is done by draft animals, or gangways whereon men have to pass to and from their work, places of refuge must be cut in the side-wall at least two and a half feet deep, and not more than twenty yards apart; but such places shall not be required in entries from which rooms are driven at regular intervals not exceeding twenty yards, and wherever there is a clear space of two and one-half feet between the car and the rib, such space shall be deemed sufficient for the safe passage of men. All places of refuge must be kept clear of obstructions and no material shall be stored nor be allowed to accumulate therein."

The first count charged a failure to have such places of

refuge where Milani was killed. The third count alleged the failure to give signals or warning of certain dangerous conditions, as required by another part of said statute. In one place in this count the word "not" is omitted, but it is agreed that the case shall be treated as if it were inserted so as to make that clause read, "not under the direction of the mine manager."

At the bottom of the shaft in this mine two car tracks go north and two go south. The shaft is double and when one cage is at the bottom the other is at the top. At the bottom of the shaft the place where the two tracks are north of the shaft is called the north bottom, and where the south tracks are is called the south bottom. On the north bottom the west track is for cars loaded with coal and ready to go to the top, and the east track is to receive empties that come down. When the west cage descends it has on it one or two empties. Loaded cars from the north are pushed on to the west cage and their force drives the empty cars south. When the east cage descends it brings empty cars, and loaded cars from the south bottom are pushed on to that cage and this forces the empties to the north. The north bottom with two tracks extends from two hundred and fifty to three hundred feet north from the cage and then they merge into one track which proceeds out towards the face of the coal, and it has many switches turning in various directions. Several hundred men were working in this mine and were taken down in cages between 6:30 and 7:00 a. m., and no miners were taken down after 7:00 a. m. The whistle was blown at 7:00 a. m. for the men to go to work. Most miners left their tools in the mine. When a miner left his tools on top they were taken down in an empty car after the men had all gone down, and such miner had to wait at the shaft bottom after 7:00 o'clock for his tools to come. On the morning in question Milani's tools were at the top and he waited at the bottom

for them, and they came down a few minutes after seven in an empty car, which was put off on the north side. When the work began at 7:00 a. m. the empty track on the north bottom had several empty cars on it, which were to be taken to the face of the mine, and it had three cars south of those empty cars which had been loaded with coal and refuse from the sump during the night. A driver came with a team, fastened the empties to those three loaded cars and took them all north beyond the bottom. Another driver, Cramer, with a team of five mules, traveling tandem, as all teams in the mine did, hitched on to those three loaded cars and went south with them on the west or loaded track. The mules did not travel between the rails of that track but in the space between the two tracks. As this trip went south, Milani and four other miners were coming north in the same space between the two tracks, each of them carrying a light. There was a light on the head mule and another on the driver's cap, the proof in this respect being different from that in the former case. Milani called out, "A team is coming," and turned to the west towards the loaded track. A man behind him called out, "A trip is coming." By "team" Milani apparently meant that he supposed it was a team of mules not attached to any car. If it had been only a team Milani would have been safe in turning to the west, but after something like two mules had passed to the east of him he apparently discovered the cars and started on the run to the south and something knocked him down onto the east rail of the west or loaded track and he was caught, either between the stationary cars and the cars of the trip, or by the head car of the trip, and was killed. Of the other men, one went to the west to a place between the timbers next to the rib, another went to the east over the empty track, a third got into an empty car on the empty track, and the fourth escaped by running towards the shaft.

There were no places of refuge along this north bottom. The main question is whether there was the clear space of two and one-half feet required by the statute above quoted. There was not such a space between the outside rail of either track and the rib next to it. The gauge of each track was three feet and two inches. The space between the two tracks was more than two and one-half feet. The coal cars did not extend over the rails. Defendant contends that the space between the tracks was the clear space required by the statute, and also that the east track was the clear space required by the statute. We must regard it as settled by *Cook v. Big Muddy-Carterville Min. Co.*, 249 Ill. 42, that there need not be a place of refuge or a clear space of two and one-half feet wide on both sides of such a passageway, and that a clear space on one side is sufficient. That case has some tendency to show that such a space between the tracks can be considered a clear space, but upon careful consideration we think it should not be so treated here. The object of this statute is to enable a miner going to or coming from his work in a way where cars of coal and empty cars are hauled to be able to protect himself from injury if he meets or is overtaken by cars being hauled on such track. In the ordinary narrow passageways in a mine the mules must travel between the two rails on which the cars they are hauling run. The proof appears to show that in this north bottom the mules were accustomed to travel in the space between the two tracks. The only time when the miner going to or coming from work in a passageway needs to be protected is when a trip of loaded or empty cars is approaching him from the front or coming up behind him. At every such time the space between these two tracks in this north bottom is not clear space and cannot be used by the traveling miner for that purpose. It is not enough that it is a clear space when no trips are going in either direction. If it had been a custom of the

· mules at that bottom to travel between the rails of the track on which the cars they were hauling were traveling, then this space between the two tracks might fairly be considered a clear space, but under the circumstances which appear to be shown by the evidence we hold it was not. If the east track was entirely free of cars, then it was a clear space, but the evidence places that in doubt. When the trip already spoken of went north, it did leave that east track vacant. When Milani's tools came down a few minutes later an empty car was set on this track. A witness testifies that immediately after the accident to Milani there were at least six empty cars standing upon that track. If they were anywhere near where this trip was when Milani discovered it so that that space was occupied, then it was not a clear space. If, on the other hand, those empties were in fact not there or were far south of Milani, then that east track may have been a clear space. On that subject the evidence was contradictory and the jury found for plaintiff.

There is, however, an error that requires a reversal. A coroner's inquest was held upon the death of Milani and a verdict was rendered which contained, among other things, the following: "According to the evidence the jury finds no blame on said coal company," the reference being to appellant. By the twenty-eighth instruction, given for the plaintiff, the jury were told that this finding is in excess of the duties and powers of that jury and is not evidence, and has no bearing on the case and should be absolutely disregarded. In *Devine v. Brunswick-Balke-Collender Co.,* 270 Ill. 504, a coroner's verdict was offered in a death case, which found that the driver of a truck of the defendant which caused the injury "was blameless for the unfortunate occurrence." The trial court admitted the entire verdict, and it was there argued that the portion above quoted was beyond the powers of the coroner's jury. It was held that the whole verdict was competent evi-

dence. Following that decision we must hold that the whole of the present coroner's verdict was competent evidence, and that it was error to give the instruction just referred to. The verdict was produced by the man who was coroner at the time of the accident, and it bore upon it a file mark by "H. Fuller, Clerk." It is argued by appellee that there is nothing to show that H. Fuller was the clerk of the Circuit Court. The *placita* to the record before us shows Henry Fuller clerk, and his name is signed to the filing of the documents in the record. Appellee argues that the case is so clear for plaintiff that we should not reverse on account of this error. We are of opinion that the question whether the east track was empty and therefore afforded a clear space is doubtful under the evidence, and that we cannot say how much importance the jury would have given to this portion of the coroner's verdict if it had not been withdrawn from their consideration. A strong argument is made against the competency of such evidence. Its competency has been established by many decisions in this State, and relief therefrom cannot now be had in the courts.

Several other instructions are criticized, but we assume that the suggestions made by counsel will cause them to be more carefully prepared at another trial without our discussing them. Many of the refused instructions were properly refused because of defects therein.

For the giving of the instruction concerning the coroner's verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*