Richard M. Skinner, Administrator, Appellee, v. Illinois Third Vein Coal Company, Appellant.

### Gen. No. 7,004.

1. APPEAL AND ERROR—*effect of decision on former appeal.* A decision on a former appeal in an action for the death of a miner, which holds that there were no places of refuge provided as required by Rev. St. ch. 93, sec. 21, on hauling roads, that there was no space of two and one-half feet between the outside rail of the track and the rib of the entry next to the outside rail, and that the space between the tracks did not relieve the mine owner from complying with the statute for the reason that such space was not clear, but was used by mules in hauling trips to the bottom of the shaft, is conclusive on a subsequent appeal where there is no substantial change in the evidence on the question.

2. MINES AND MINERALS—*insufficiency of intertrack space as substitute for places of refuge.* A mine owner cannot contend that places of refuge on hauling roads are not required, for the reason that there is a clear unused space between tracks, when the evidence shows that mules used in hauling cars, traveled in the space between the two tracks, so that persons traveling along the entry were compelled to seek places of refuge when they met trips, or loaded cars being moved.

3. MINES AND MINERALS—*care is required of miner in sudden danger.* When a miner is in an entry full of dust and a loaded car is rapidly approaching, the place being in semidarkness, he is confronted with a sudden danger, and in seeking a place of safety is not called upon to exercise that degree of care and foresight which would be required if there was time for reflection, or time

for him to deliberately determine what was necessary to protect himself from danger.

4. MINES AND MINERALS—*contributory negligence of miner as question of fact.* The question whether a miner killed in an entry by being run over by a loaded car was in the exercise of due care and caution is a question of fact for the jury, when the evidence shows that the entry was filled with dust, was semi-dark, and the car was approaching rapidly, there being a conflict in the evidence as to whether the adjoining track was clear or had cars on it, and the circumstances being such that the desire for self-preservation would impel the miner to exercise every faculty to prevent being killed.

5. MINES AND MINERALS—*negligence of mining company as question of fact.* The question of negligence of a coal mining company in failing to maintain places of refuge in side walls of a roadway in the mine, there being no clear space between the coal cars and the rib of two and one-half feet, and in failing to provide safe conditions of work, as required by Rev. St. ch. 93, secs. 21, 18B, are questions of fact for the jury, when a miner was killed at a place where there was a conflict in the evidence as to whether one of the tracks in the entry was clear of cars or not, and where the evidence was in conflict as to whether the mules had lights on their heads.

6. APPEAL AND ERROR—*verdict in action for death not disturbed where evidence conflicting.* A verdict in favor of the administrator of a deceased miner who was killed in an entry by being run over by a train of loaded cars drawn by mules will not be disturbed on appeal, where the evidence shows that the decedent was killed at an unsafe place, an entry which was dark was filled with dust, there being no places of refuge on the sides of the track where the miners might go when the trains approached.

7. MINES AND MINERALS—*competency of evidence as to nonexistence of statutory place of refuge.* Testimony of a witness to an accident in a mine, where a miner was run over by a coal car drawn by mules, which was merely negative to the effect that there were no places of refuge cut in the wall to the side of the roadway, is competent, and not subject to objection as being the conclusion of the witness.

8. APPEAL AND ERROR—*admission of evidence as to matter admitted in brief as harmless.* Testimony of a witness to an accident in a coal mine, where a miner was run over by cars loaded with coal and drawn by mules, to the effect that no places of refuge were cut in the wall to the side of the roadway, cannot be objected to on appeal as being the conclusion of the witness, when the appellant's brief admits that there were no places of refuge, because in such case the admission of the testimony is harmless.

9. APPEAL AND ERROR—*error in admitting evidence as to matter otherwise shown as harmless.* Testimony of a witness to an accident in a coal mine where a miner was run over by a train of cars drawn by mules, to the effect that the mules approached "pretty fast," cannot be said to be harmful to the coal company appealing from a verdict against it, there being evidence that the cars approached at a rapid rate of speed.

10. MINES AND MINERALS—*basis in evidence for instruction as to safe place of work.* An instruction setting out the statute (Rev. St. ch. 93, sec. 18B), relative to making places in mines safe for miners working there, is not subject to objection as not being based on the evidence, when the evidence sustains a count of the declaration alleging such violation of the statute, in an action for the death of a miner run over by a train of loaded cars drawn by mules.

11. MINES AND MINERALS—*when instruction as to places of refuge not misleading.* An instruction setting out the statute (Rev. St. ch. 93, sec. 21) requiring mine owners to provide places of refuge cut in the walls of entries and roadways, to which miners may go when trains pass, cannot be said to be subject to objection as tending to mislead the jury, in an action for the death of a miner, based on the violation of such statute, the miner having been run over by a train of loaded cars.

12. INSTRUCTIONS—*propriety of refusing where otherwise covered.* The refusal of requested instructions in an action for the death of a coal miner, run over by a train of loaded cars, in a narrow entry, is not error even though the refused instructions embody correct rules, when no complicated questions of law are involved, and when the instructions given fully presented all questions applicable to the facts of the case.

Appeal from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed April 27, 1922. *Certiorari* denied by Supreme Court (making opinion final).

JOHN J. SHERLOCK and McDOUGALL, CHAPMAN & BAYNE, for appellant.

J. L. MURPHY and J. L. SPAULDING, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

This was an action on the case originally brought

by Catarina Milani, as widow of Ricardo Milani, deceased, in the circuit court of Bureau county to recover damages to the widow and children of the deceased by reason of his death in the mine of the appellant at Ladd, Illinois, on April 7, 1907. After suit was begun the statute was amended, providing that such action should be brought by the administrator of the deceased, whereupon A. M. Swengel, as administrator, was substituted as party plaintiff. Mr. Swengel died and Richard M. Skinner, public administrator of Bureau county, became party plaintiff. There was a trial by jury and a verdict for $3,000. Upon appeal to this court, the judgment was reversed and the cause remanded because of erroneous instructions. 203 Ill. App. 600. There was a second trial in the circuit court and the jury disagreed. Upon a third trial there was a verdict for $3,000. Judgment was rendered upon the verdict and this appeal was prosecuted. Prior to the commencement of this suit another suit was commenced in which the declaration contained only common-law counts. There was a trial in that case, verdict for $2,500, and an appeal to this court, where the judgment was reversed on account of erroneous instructions. 154 Ill. App. 409. Upon the second trial of that case there was a verdict of not guilty.

On the two former occasions when this case was under consideration by this court, the facts were fully stated and they need not be repeated. The first error urged is that, at the close of all the evidence, the court improperly refused to direct a verdict in favor of the appellant. The case was tried on the first and third counts of the declaration. The first count alleged that the appellant wilfully failed to cut and maintain, in the side walls of the roadway of the mine, places of refuge at least two feet wide and two and one-half feet deep and not more than 20 yards apart, and that on the roadway there were no rooms or entries branching off at regular intervals not exceeding 20 yards, and that

there was no clear space of two and one-half feet between the car and the rib.    The third count alleged that, on the north bottom of the mine, for a distance of more than 500 feet from the bottom of the shaft, on which roadway Milani had to travel to his working place, the road was so narrow that a person meeting a trip had great difficulty in avoiding it; that there were no places on the side for a person to get out of the way and avoid a trip; that the road was blocked and obstructed with standing cars and other obstructions, so that it was difficult to find a place to avoid trips which might be encountered; that trips of cars, hauled by mules, came toward the shaft through the darkness and dust, at a great rate of speed, in violation of the rules of the mine; that the trips came at times when the men traveled on the road to and from their working places, and when such trips were not expected; that no signals were used to warn persons using the road when such trips might be expected; that no danger signals were displayed, warning persons traveling along the road so that they might know when trips would be coming; that no mention of such conditions was made in the daily record of the mine examiner.

The first count was based upon section 21, ch. 93, of the statute then in force, which provided that on all hauling roads, or gangways on which the hauling is done by draft animals, or gangways whereon men have to pass to and from their work, places of refuge must be cut in the side wall at least two and one-half feet deep and not more than 20 yards apart, but such places shall not be required in entries from which rooms are driven at regular intervals not exceeding 20 yards, and whenever there is a clear space of two and one-half feet between the car and the rib, such space shall be deemed sufficient for the safe passage of men.    The third count was based upon paragraph B, sec. 18, ch. 93, of the same statute, which provided that no one

shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the directions of the mine manager, until all conditions have been made safe.

Under the first count it is insisted that the statute does not require places of refuge at the place where the accident happened for the reason that there was a clear space of over two and one-half feet between the two tracks which furnished a safe passage for travel, and this excused appellant from cutting places of refuge as provided in the statute. It is also urged under this count that Milani was guilty of contributory negligence for the reason that he heard the team coming and he could have turned and walked back a few feet until he came to the empty car, or he could have turned to the right and he would have been on the empty track where there was a space 5 or 6 feet wide where there were no cars, no mules or obstructions; but, instead of so doing, when he heard the mules coming, he made no effort to seek these places of refuge, but continued to go forward until he got to the mules and then he turned in the wrong direction, attempted to step on the loaded track on which he knew the loaded cars were coming, and he fell and was run over and killed. Under the third count it is urged that the verdict should have been directed for appellant because the evidence fails to show that the place where Milani was killed was unsafe, and there is no evidence that he was not under the direction of the mine manager at the time he met his death.

We are of the opinion that the greater part of the contention of the appellant is settled by the former decisions of this court. In *Swengel v. Illinois Third Vein Coal Co.*, 154 Ill. App. 409, it was urged that Milani was guilty of negligence in taking the side of the loaded track and that the appellant was not guilty of the negligence charged. After considering all of the

evidence, on page 414, this court says: "The proof clearly warrants the conclusion that it was negligent to drive the team hauling the loaded cars down the track without a light. The evidence left it doubtful whether the space on the outside of these tracks on either side of this way was, in the absence of places of refuge, of the depth required by the Mines and Miners Act. If not, then the omission to supply places of refuge was a violation of the requirements of the act. As Milani had a right to depend upon appellant's compliance with the requirements of the statute, we are of the opinion that on the question of Milani's care and appellant's negligence, the verdict is sustained by the evidence." In *Swengel v. Illinois Third Vein Coal Co.*, 203 Ill. App. 600, on page 604, we said: "There were no places of refuge along this north bottom. The main question is whether there was the clear space of two and one-half feet required by the statute above quoted. There was not such a space between the outside rail of either track and the rib next to it. The gauge of each track was three feet and two inches. The space between the two tracks was more than two and one-half feet. The coal cars did not extend over the rails. Defendant contends that the space between the tracks was the clear space required by the statute, and also that the east track was the clear space required by the statute. We must regard it as settled by *Cook v. Big Muddy-Carterville Min. Co.*, 249 Ill. 42, that there need not be a place of refuge or a clear space of two and one-half feet wide on both sides of such a passageway, and that a clear space on one side is sufficient. That case has some tendency to show that such a space between the tracks can be considered a clear space, but upon careful consideration we think it should not be so treated here. The object of this statute is to enable a miner going to or coming from his work in a way where cars of coal and empty cars are hauled to be able to protect himself from injury if he

meets or is overtaken by cars being hauled on such track. In the ordinary narrow passageways in a mine the mules must travel between the two rails on which the cars they are hauling run. The proof appears to show that in this north bottom the mules were accustomed to travel in the space between the two tracks. The only time when the miner going to or coming from work in a passageway needs to be protected is when a trip of loaded or empty cars is approaching him from the front or coming up behind him. At every such time the space between these two tracks in this north bottom is not clear space and cannot be used by the traveling miner for that purpose. It is not enough that it is a clear space when no trips are going in either direction. If it had been a custom of the mules at that bottom to travel between the rails of the track on which the cars they were hauling were traveling, then this space between the two tracks might fairly be considered a clear space, but under the circumstances which appear to be shown by the evidence we hold it was not. If the east track was entirely free of cars, then it was a clear space, but the evidence places that in doubt. When the trip already spoken of went north, it did leave that east track vacant. When Milani's tools came down a few minutes later an empty car was set on this track. A witness testified that immediately after the accident to Milani there were at least six empty cars standing upon that track. If they were anywhere near where this trip was when Milani discovered it so that that space was occupied, then it was not a clear space. If, on the other hand, those empties were in fact not there or were far south of Milani, then that east track may have been a clear space. On that subject the evidence was contradictory and the jury found for plaintiff.''

It is true that on the two former occasions when this case was before us the evidence was not exactly the same as it is now. For example, in the first case, there

was evidence tending to show that there was no light on the head of the first mule, while in the second case the evidence tends to show that there was such a light. But the evidence in each of these cases shows that the physical conditions on the bottom of the shaft and along the roadway in question were the same, including the locations of the tracks, the width of the entry, how this width was divided, the location of the cars, the manner in which the trips came down the entry and the facts relative to what happened at the time Milani was killed. Our last decision holds that there were no places of refuge as required by the statute along the side of either wall of the entry; that there was no space of two and one-half feet between the outside rail of the track and the rib of the entry next to that ouside rail; that the space between the tracks did not relieve appellant from complying with the statute for the reason that the space was not clear, but was used by the mules in hauling trips to the bottom of the shaft. We see no reason, under the evidence in this case, why we should change any of our views on any of these questions as they were expressed on the former appeal.

On the morning of the accident, about 7 o'clock, Milani and four other miners started from the bottom of the shaft along the entry going to their working places. They could not walk on the space on the outside of the rails of either track for the reason that this space was not two and one-half feet wide and there were no places of refuge cut along either wall as required by the statute. They started down the space between the two tracks which was the usual and customary way of traveling to their working places. The empty track, or east track, had several empty cars on it, which were to be taken to the face to be loaded with coal, and south of these empty cars there were three cars which had been loaded with coal and refuse from the sump. A driver fastened the empty and loaded cars together and took them north on the east track

beyond the bottom. Another driver, Cramer, with a team of five mules traveling tandem, hitched his team to these three loaded cars and went south on the west, or loaded, track. The mules did not travel between the rails of the west track, but they were traveling in the space between the two tracks. For this reason there was not a clear, unused space between the two tracks, as contended by the appellant, and persons traveling along the entry were compelled to seek places of refuge when they met trips under these circumstances. As this trip went south it met Milani and his four companions. Milani called out that a team was coming. One of his companions behind him called out that a trip was coming. By a "team" was meant a team of mules not atached to a car, while a "trip" meant mules hitched to loaded cars. Milani turned to the west and if a team had been coming he would have been safe in so turning. After two mules had passed him on the east side, Milani saw that it was a trip and not a team. He started to run south, but was knocked down onto the east rail of the west track and was killed. One of his companions went west to a space between the timbers next to the rib. Another went east over the empty track. The third got into an empty car and the fourth went south towards the bottom of the shaft. There were no places of refuge along the rib on either side, as provided by the statute and, unless there was such a sufficient space between the two tracks, the appellant was not excused from complying with the statute. While the evidence shows that there was more than two and one-half feet between the tracks, it also shows that this space was traveled by the mules and for this reason was not a clear space and did not afford ample protection to the miners traveling to and from their working place and it did not excuse the failure to comply with the statute.

It is urged by appellant that at the time the trip met Milani and his companions there were no cars on

the east track and that there was a clear space of about 9 feet between the east rail of the west track and the east rib, which space was sufficient for his protection and, if he had gone east instead of west, he would not have been killed; that the failure to comply with the statute was not the proximate cause of the accident, but that Milani was guilty of contributory negligence. There was a conflict in the evidence as to whether there were any cars on the east track at the time of the accident. There had been cars there just prior to the accident. Whether deceased knew the exact condition of the east track at the time of the accident does not clearly appear from the evidence. The only lights at the place of the accident were those furnished by the lamps on the caps of the men and were not sufficient to clearly disclose the surroundings. In this semidarkness, with the entry full of dust and the car approaching at a rapid rate of speed, Milani was confronted with a sudden danger and was not called upon to exercise that degree of care and foresight which would have been required of him had there been time for reflection, or time for him deliberately to determine what was necessary to be done in order to protect himself from danger. *Paige v. Illinois Steel Co.*, 233 Ill. 313. The desire for self-preservation impelled him to exercise every faculty to prevent being killed, or from receiving great bodily harm. It was a question of fact for the jury to say whether Milani was in the exercise of due care and caution and whether the appellant was guilty of the negligence charged in either or both counts of the declaration. After considering all the evidence we cannot say that the jury were not justified in finding for the appellee under both counts of the declaration.

On direct examination, the witness Dart was permitted to testify that there were no places two and one-half feet deep cut in either wall of the roadway and not more than 20 yards apart. It is urged that this

was the mere conclusion of the witness, and while there were no places of refuge cut in the wall, yet there were places of the required dimensions which complied with the statute, and that the questions asked permitted the witness to construe the meaning of the statute. It is also complained that the witness Bernardi was permitted to testify that the mules were coming ''pretty fast.'' As to the places cut in the wall, the witness was merely permitted to testify to a negative, that is, that there were no places cut in the wall. We do not think the answer was incompetent and, even if it had been, it was on a point admitted by the appellant and did no harm. On page 26 of appellant's argument, it is said: ''It is admitted that we cut no places of refuge in the walls of this entryway, and it is admitted that there was no clear space of two and one-half feet between the car and the nearest leg on either side of the entryway.'' Neither do we think any harm was done by the last answer admitted.

Complaint is made of instructions given and refused. On the trial fifty-six instructions were submitted to the trial court. Of these sixteen were offered on behalf of the appellee and forty on behalf of the appellant. The court gave eleven on behalf of the appellee and refused five. Of those given, complaint is made by appellant of the fifth and sixth. The fifth sets out the statute relative to places of refuge as contained in the first count of the declaration, while the sixth set out the statute relative to making all places safe as set out in the third count of the declaration. It is admitted that both instructions state correct rules of law, but it is insisted that the fifth was calculated to mislead the jury and the sixth should not have been given because there was no evidence on which to base it. We have held that the allegations of the third count were sustained by the evidence and for that reason there was evidence on which to base the sixth instruction. We do not think there is any-

thing in the fifth instruction which would mislead the jury. Nineteen instructions were given on behalf of the appellant and twenty-one refused. Of these refused instructions, error is assigned on most all of them. There were no complicated questions of law in this case and there was no necessity for burdening the trial court with so many instructions. Neither would any good purpose be served in considering each of these twenty-one instructions refused for appellant. We deem it sufficient to say that we have examined all of the instructions given and are of the opinion that they fully presented all questions applicable to the facts of the case. While some of the twenty-one instructions refused may have announced correct propositions of law, we do not think there was error in refusing any of them.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*